UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Cheri M. Zoromski and
Gary G. Zoromski,

Debtors.

Case No. 19-20752-beh

Chapter 7

**DECISION AND ORDER GRANTING
DEBTORS' MOTION TO VACATE DISCHARGE**

Not expecting to make a "silk purse out of a sow's ear," the debtors valued their partial interest in northern Wisconsin swamp land at a modest rate. But several months later they learned that the swamp land included valuable forestation, altering the value of estate assets and their bankruptcy strategy. Impending deadlines required action; the question presented is whether there was excusable neglect for failing to timely extend the deadline to object to their Chapter 7 discharges before they issued, such that the debtors may preserve the opportunity to convert their case to a Chapter 13.

### BACKGROUND

The Zoromskis filed this Chapter 7 case on January 29, 2019. In May 2019, the Chapter 7 trustee filed a notice of assets and set a deadline for creditors to file proofs of claim. In September 2019—two days after receiving their discharges, and before the trustee had fully administered the estate—the debtors moved to convert their case to a Chapter 13. Because the Court questioned its ability to grant a motion to convert in the circumstances (citing *In re Starling*, 359 B.R. 901, 908-10 (Bankr. N.D. Ill. 2007), *In re Santos*, 561 B.R. 825, 827-32 (Bankr. C.D. Cal. 2017), and authority therein), the Court ordered the debtors to file a brief explaining why they should be allowed to convert their case to Chapter 13 after receiving Chapter 7 discharges.

On the deadline to file their supporting brief, the debtors' counsel altered his clients' request somewhat. He filed a motion to vacate the discharges, as

well as a motion to extend the briefing deadline on the motion to convert for 30 days, to await the outcome of the motion to vacate. ECF Doc. Nos. 38, 39. The Court granted the 30-day extension.

In support of their motion to vacate the discharges, the debtors describe the following timeline:

- **November 2018:** The debtors consulted with their attorney for purposes of filing bankruptcy. At that consultation, they disclosed four separate but connected parcels of land in which Mr. Zoromski held a partial interest, and provided their attorney with the real estate tax bill statements and recorded deeds for each of the four parcels. Family members held the remaining interests. The documents indicated that the value of the land was $124,300, meaning Mr. Zoromski's partial interest was $22,950. The debtors "believed these values to be fair and accurate based on their knowledge and the fact that such land was unfarmable swamp lands used for hunting."

- **January 29, 2019:** The debtors filed their Chapter 7 petition, listing the four parcels of real property in Schedule A/B, with the value of their interest as $22,950.

- **March 21, 2019:** The debtors attended their first meeting of creditors, at which the Chapter 7 trustee requested additional supporting documentation to substantiate the values of the four parcels of real property.

- **April 2019:** Around April 13, 2019, the debtors hired a certified appraisal service to conduct an appraisal on the land. The appraisal concluded that a reasonable fair market value for the land was $295,000.[1] The debtors "attempted to contact the appraiser to obtain an explanation for the significant variance in the appraised value versus the real estate tax bill value but did not receive a return call for several weeks. Upon speaking to the appraiser, he explained that the difference

---

[1] The chronology counsel recites is not wholly consistent. After stating that the trustee requested information to substantiate the real property values at the March 21 meeting of creditors, counsel asserts: "Due to the Debtors['] financial situation, they were unable to pay for an appraisal service for several months." But immediately following that representation, counsel claims that the debtors hired an appraiser around April 13; in addition, the appraisal report attached to the motion reflects that the appraisal was conducted on April 23, 2019 and is accompanied by a cover letter to the debtors and an invoice, both dated April 30. *See also* ECF Doc. No. 38, at 8 ("It was only after the Chapter 7 Trustee requested a post-petition appraisal following the Debtors' 341 Meeting of Creditors, and then several months following such hearing that Debtors were able to afford and obtain the appraisal, that they realized this equity existed.").

in value was due to a government forestry program, which, as understood by Debtors, undervalued the land for purposes of providing tax benefits to landowners in exchange for upholding maintenance requirements on the forested property." As a result of this unexpected and significant difference in value (an increase of $170,000), there existed a significant and unforeseen amount of non-exempt equity in the land.

- **May 2, 2019:** The trustee filed a notice of assets and request for creditors to file proofs of claims. *See* ECF Doc. No. 9.

- **May – July 2019:** The debtors tried to work out a compromise with the trustee, because they did not wish to surrender the land. They "explored several alternatives to satisfy their unexpected obligations to the estate, including pledging the land as collateral for a loan and pooling money from friends and family, among other things," but ultimately they were unable to provide an alternative to purchase the estate's interest in the land. During this period of time, the debtors and the Chapter 7 trustee filed two stipulations (one on May 13 and one on July 22) to extend the deadline for the trustee to object to discharge, resulting in an extended deadline of September 18, 2019. *See* ECF Doc. Nos. 12, 14, 25, and 27.

- **Sometime before September 23, 2019:** The debtors met with their attorney and decided they would convert their Chapter 7 case to a case under Chapter 13. In preparation for the conversion, they drafted a proposed Chapter 13 plan that offered to pay their non-student loan unsecured claims at an interest rate of 5.5% through the plan as well as a provision requiring them to stipulate to reconvert to Chapter 7 should their Chapter 13 be subject to dismissal at any time.

- **September 23, 2019:** The debtors' discharges were entered. Counsel adds: "It was Debtors' aim to convert their case prior to the Discharge of their Chapter 7, however, Debtors' counsel inadvertently failed to stipulate with the Chapter 7 Trustee for another extension of the Discharge deadline. As a result, during the preparation for conversion of the case, the Court entered an Order Discharging Both Debtors on September 23rd, 2019." ECF Doc. No. 38, at 5, ¶ 20.

- **September 25, 2019:** The debtors filed their motion to convert.

## DISCUSSION

The debtors ask the Court to vacate the order of discharge under Rule 60(b) of the Federal Rules of Civil Procedure, made applicable here by

Bankruptcy Rule 9024. Specifically, the debtors invoke subsections (b)(1), (b)(5), and (b)(6) of Rule 60, which provide as follows:

> (b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> > . . .
> > (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> > (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). It is well settled that Rule 60(b) relief is an extraordinary remedy, granted only in exceptional circumstances. *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000). The Rule allows a court to "address mistakes attributable to special circumstances and not merely to erroneous applications of law." *Russell v. Delcom Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). It authorizes courts to grant relief from a judgment or order for the particular reasons listed in the Rule, but does not authorize action in response to general requests for relief. *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995).

The debtors first assert that the discharge order was entered as a result of their surprise and/or excusable neglect, citing Rule 60(b)(1). The alleged "surprise" is the post-petition appraisal that more than doubled the value of the Zoromskis' land: "The fact that the values listed on the real estate tax bills were minimized due to government forestry regulations was not knowledge that the Debtors' nor [sic] their counsel were privy to before the case was initially prepared and filed." ECF Doc. No. 38, at 8. The alleged "excusable neglect" is their attorney's failure to stipulate to a third extension of the discharge deadline:

> Debtors were not aware that their counsel and the Chapter 7 Trustee failed to delay their discharge a subsequent time to avoid the entry of discharge before their case was motioned to be converted to Chapter 13. The Debtors' counsel and the Chapter 7

> Trustee had extended the deadline to object to dischargeability on several occasions throughout this case while they attempted to resolve the Debtors' obligations owed to the estate in lieu of selling the land. However, towards the conclusion of the final extension granted by the Court, Debtors' counsel inadvertently failed to request another extension, and in such delay the Court slipped in the entry of Discharge at no fault of the Debtors just two days prior to the Debtors' motion to convert. Debtors' counsel admitted to such failure and attributed the failure to timely motion the Court for conversion due to the time elapsed during the preparation of the Debtors' motion, supporting documents and schedules required.

*Id.*

Setting aside the merits of the motion to vacate, the Court first must disabuse counsel of the notion that the Court "slipped in" the Zoromskis' discharges. Bankruptcy Rule 4004(c)(1) provides that the Court "shall forthwith grant the discharge" once the deadline for objecting to discharge has passed (subject to other exceptions not relevant here). Fed. R. Bankr. P. 4001(c)(1). The deadline for the trustee to object to the debtors' discharges passed on September 18. Five days later, on September 23, the Court entered the discharge order. Counsel is an experienced bankruptcy attorney. Counsel should not have been caught unawares that the Court issued the debtors' discharges shortly after September 18. Moreover, the text of the conversion motion, when filed, was a single page.

Turning to the issue of "surprise" under Rule 60, the Court concludes that the debtors' receipt of an appraisal around April 30, 2019, which unexpectedly increased the value of their property, is not the kind of surprise that warrants relief under Rule 60(b)(1) in the circumstances. The Court has no doubt that the debtors did not, in fact, anticipate the additional $170,000 in equity the appraisal reflected. But they learned of this increase in equity well in advance of the discharge date—soon enough to stipulate to two extensions of the discharge-objection deadline. The debtors agreed to extend this deadline to

September 18.  They cannot claim surprise at the entry of the discharge on September 23.

The debtors' excusable neglect argument, however, ultimately fares better.  Excusable neglect is an equitable determination arrived at by weighing all relevant circumstances surrounding the failure to act, including the danger of prejudice to other parties, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).  Attorney negligence—the root deficient conduct alleged here—may constitute excusable neglect in some situations.  *See In re Barsamian*, 318 B.R. 508, 510 (Bankr. W.D. Wis. 2004) (explaining that Congress contemplated that courts would, where appropriate, accept late filings caused by counsel's inadvertence, mistake, or carelessness).  Excusable carelessness, however, does not encompass gross carelessness or ignorance of the law.  *See In re Pulsifer*, Case No. 13-2176-svk, 2015 WL 6694131, at *4 (Bankr. E.D. Wis. Nov. 2, 2015), discussing *Pettle v. Bickham (In re Bickham)*, 410 F.3d 189, 192 (5th Cir. 2005).

There appears to be minimal danger of prejudice to the parties if the discharge order is vacated.  The Chapter 7 trustee has not objected to the motion to vacate or the motion to convert.  The debtors intend to file a Chapter 13 plan that will pay unsecured creditors 100% and also will stipulate to a reconversion to Chapter 7 if the case is subject to dismissal as a Chapter 13.  Although it was within the reasonable control of the debtors to prevent the September 23 entry of their discharges by stipulating to another extension of time—or by moving to defer the entry of discharge under Bankruptcy Rule 4004(c)(2)—this control factor is not fatal to their motion, in part because it does not appear the debtors themselves delayed in filing a request to extend the entry of discharge.  And, there is no suggestion of bad faith on the part of

the debtors, who intend to convert their case to Chapter 13 both to save their land *and* pay unsecured creditors 100%.

As noted above, the motion requests that the Court find counsel's oversight in failing to seek a third extension of the entry of discharge as excusable neglect. He had timely stipulated with the Chapter 7 trustee to extend the discharge deadline twice, demonstrating prior diligence. Even though Rule 60(b) relief is an extraordinary remedy, a number of courts have observed that the *Pioneer* decision established a "more flexible analysis" of the Rule 60(b) excusable neglect standard, particularly in the case where a lawyer misses a filing deadline in his clients' case. *See, e.g., Barsamian*, 318 B.R. at 509, citing *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 361-62 (7th Cir. 1997), *Fink v. Union Cent. Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir. 1995), and *United States v. Hooper*, 9 F.3d 257, 258 (2d Cir. 1993), among others. As an example, in *Barsamian*, counsel had calendared a hearing, but for a month later than the actual hearing date. The court found counsel's error to be excusable neglect. In *Harrington v. City of Chicago*, 433 F.3d 542, 546-47 (7th Cir. 2006), on the other hand, the court affirmed a finding of no excusable neglect due to counsel's inattentiveness to litigation, including failure to attend or respond to discovery. Here, while it does not appear counsel calendared the expiring deadline at all, there is no evidence of a sinister motive or pattern of failures to act, as in *Harrington*. Instead, the Zoromskis' counsel acted promptly upon receiving notice of his clients' discharge, and the Court expects he since has taken action within his office to improve calendaring systems.

Hence, under the more flexible analysis of *Pioneer*, the equities weigh in favor of a finding of excusable neglect. For these reasons, the Court concludes that the debtors have established excusable neglect sufficient to grant their motion to vacate the discharge order under Federal Rule of Civil Procedure 60(b)(1).

For completeness of discussion, however, the Court will address briefly the Zoromskis' alternative arguments under Rules 60(b)(5) and (b)(6).

Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, "applying [the judgment or order] prospectively is no longer equitable." The debtors assert that Rule 60(b)(5) applies here because "it is no longer equitable that the discharge order should maintain its effect due to Debtors' intention of converting the case to Chapter 13 and paying their creditors and in light of Debtors' intention to save the land." The debtors do not refer the Court to any relevant case law or other authority discussing Rule 60(b)(5), but instead describe the facts of *In re Castleman*, Case No. 97-73230, 1998 WL 34069412 (Bankr. C.D. Ill. May 8, 1998), a case that does not mention, let alone examine, Rule 60(b)(5). *See also Tyler v. Runyon,* 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (internal quotations omitted). A citation to *Castleman* cannot compensate for the debtors' failure to demonstrate a basis for relief under Rule 60(b)(5)—*i.e.*, an unanticipated significant "change in circumstances" that occurred after the discharge order was entered. "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores,* 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367 (1992)). The facts do not establish such post-order change exists here.

And finally, because the Court has determined that the debtors established excusable neglect by their counsel under Rule 60(b)(1), Rule 60(b)(6) cannot apply. "The two rules are mutually exclusive—Rule 60(b)(6), as a residual catchall, applies only if the other specifically enumerated rules do not." *Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018). The Court therefore need not consider the debtors' argument for relief under Rule 60(b)(6).

Accordingly, and for the foregoing reasons,

IT IS HEREBY ORDERED that the debtors' motion is granted and the September 23, 2019 order of discharge is VACATED.

Dated: December 16, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge